```
               IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF TEXAS
                         HOUSTON DIVISION


BANCROFT LIFE & CASUALTY         §
ICC, LTD.,                       §
                                 §
     Plaintiff and Counterclaim  §
     Defendant,                  §
                                 §
v.                               §    CIVIL ACTION NO. H-12-2015
                                 §
DAVNIC VENTURES, L.P.,           §
                                 §
     Defendant and Counterclaim  §
     Plaintiff,                  §
```

MEMORANDUM AND ORDER

Pending is Counterclaim-Defendant Bancroft Life & Casualty ICC, Ltd.'s Motion to Dismiss the Counterclaims (Document No. 16). After having reviewed the motion, response, reply, and applicable law, the Court concludes that the motion should be granted.

I.   Background

Plaintiff and Counter-Defendant Bancroft Life & Casualty ICC, Ltd. ("Bancroft") is an insurance company based in St. Lucia.[1] Beginning in December 2006, Defendant and Counter-Plaintiff Davnic Ventures, L.P. ("Davnic") bought Bancroft's insurance product, "Premium Lite," to cover the risk of business losses.[2] In late

---

[1] Document No. 13 ¶ 14.

[2] Id. ¶¶ 1, 18.

2006 and early 2007, Davnic sent $200,000 in insurance premiums to Bancroft's third party administrator.[3] Bancroft allegedly gives to its insureds the opportunity to borrow back 70% of their premiums in the form of loans. In December 2006, Bancroft loaned to Davnic $70,000, and in April, 2007, Bancroft loaned to Davnic an additional $70,000; and Davnic executed its promissory notes to Bancroft for each such loan.[4] Bancroft sued Davnic claiming breach of contract, and other similar claims relating to Davnic's default on the two promissory notes.[5] Davnic counterclaimed against Bancroft, alleging claims arising out of or related to Davnic's participation in Bancroft's insurance product(s) and Certificates of Insurance issued by Bancroft to Davnic, to wit: breach of contract for failure to pay an insurance claim and failure to return unused premium; conversion; fraudulent inducement; breach of fiduciary duty; unjust enrichment; request for an accounting; and rescission based on Bancroft's failure to provide coverage for covered business losses in August 2009.[6]

Bancroft now moves to dismiss the counterclaims based upon a proviso in the insurance policy that establishes St. Lucia as the exclusive venue for actions under the insurance policy.

---

[3] Document No. 18 at 4.

[4] Document No. 13 at 16; Document No. 18 at 4.

[5] Document No. 1 (Orig. Cmplt.).

[6] *See* Document No. 18.

II.   Motion to Dismiss for Improper Venue

A.   Legal Standard

Rule 12(b)(3), which establishes a defense of improper venue, may be used to seek dismissal based on a forum selection clause. *See* FED. R. CIV. P. 12(b)(3); Lim v. Offshore Specialty Fabricators, Inc., 404 F.3d 898, 902 (5th Cir. 2005).[7]  Federal law governs the determination of the enforceability of a forum selection clause for diversity cases in federal court.  Haynsworth v. The Corp., 121 F.3d 956, 962 (5th Cir. 1997).  Forum-selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." M/S Bremen v. Zapata Off-Shore Co., 92 S. Ct. 1907, 1913 (1972) (internal quotation marks and citations omitted).

> Unreasonableness potentially exists where (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement 'will for all practical purposes be deprived of his day in court' because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.

---

[7] *See also* Noble Drilling Servs., Inc. v. Certex USA, Inc., 620 F.3d 469, 472 n.3 (5th Cir. 2010) (noting that the Fifth Circuit "has not previously definitively decided whether Rule 12(b)(1) or Rule 12(b)(3) is the proper rule for motions to dismiss based on an arbitration or forum-selection clause" but declining to address the issue because, as here, the parties did not address it).

Haynsworth, 121 F.3d at 963 (citations omitted).  "The party resisting enforcement [of the forum selection clause] on these grounds bears a 'heavy burden of proof.'" Id. (quoting The Bremen, 92 S. Ct. at 1917); *accord* Afram Carriers, Inc. v. Moeykens, 145 F.3d 298, 301 (5th Cir. 1998) ("The burden of proving unreasonableness is a heavy one, carried only by a showing that *the clause* results from fraud or overreaching, that it violates a strong public policy, or that enforcement of the clause deprives the [resisting party] of his day in court." (quotation marks and citations omitted) (emphasis in original)).

B.  Discussion

Davnic objects to the Court's enforcement of the Saint Lucia forum selection clause for three reasons: (1) it never agreed to the clause; (2) Bancroft waived the clause when it brought the suit on the Notes in this Court; and (3) the Saint Lucia clause is unreasonable.[8]

1.  Agreement to the Clause

"The Court first must determine whether Defendant agreed to the clause before considering whether it is *enforceable*." Valero Mktg. & Supply Co. v. Baldwin Contracting Co., Inc., Civ. A. No. H-09-2957, 2010 WL 1068105, at *2 (S.D. Tex. Mar. 19, 2010) (emphasis

---

[8] Document No. 18 at 2-3.

4

in original").  When Davnic bought the insurance policy from Bancroft, the Group Master Policy contained a provision that "[a]ny action at law or in equity must be brought only in the Courts of Saint Lucia, West Indies, and the law of Saint Lucia, West Indies shall be controlling law for all legal equitable, or administrative purposes or proceedings."[9]  The Group Master Policy was amended in 2008 but retained the same provision.[10]  The application completed and signed in December 2006 by Davnic's principal, David Johnson, states that:

> The Insurer is licensed under the provisions of the Insurance Act of Saint Lucia to provide general insurance.  The insurance cannot be directly purchased in the United States and group coverage is only made available through participating associations to their membership.  *The benefits of this coverage may only be enforced within the jurisdiction and under the laws of Saint Lucia.*

Document No. 13, ex. J at 7 (emphasis added).  Davnic's application further states that:

> Applicant acknowledges that the Insurer is licensed and admitted in Saint Lucia.  The coverage cannot be offered in the United States.  *The benefits of this coverage may only be enforced within the jurisdiction and under the laws of Saint Lucia.*

---

[9] Document No. 16, ex. A at 3; ex. A-1 at 9.

[10] Id., ex. A at 3; ex. A-2 at 9.  The clause was later amended in the 2010 Group Master Policy.  Because Davnic's claims are based upon conduct occurring in 2009, at the latest, the 2010 Policy is not applicable under the facts of this case.  Id., ex. A at 4.

<u>Id.</u>, ex. J. at 14 (emphasis added). The pages containing these provisions are both initialed by Johnson. Davnic submitted its application, and Bancroft approved it and issued a Certificate of Insurance dated December 31, 2006.[11] Each Certificate, issued annually for each new coverage year, confirmed coverage under a Group Policy which could be viewed pursuant to instructions on the Certificate, and stated that "the Group Policy sets forth the terms and conditions of the insurance provided."[12] Each Certificate contains at the top of the front page Bancroft's name and address in "Castries, Saint Lucia, West Indies."

Davnic's submission of the application with the express language set out above demonstrates that Davnic not only received notice that the Policy could be enforced only in Saint Lucia but that Davnic accepted such. Moreover, as this Court held in a similar case involving Bancroft and other of its insureds, by virtue of the Certificate, Davnic received constructive notice of the terms of the Group Policy that governed their agreement with Bancroft. *See* <u>Bancroft Life & Cas. ICC, Ltd. v. FFD Res. III, LLC</u>, Civ. A. No. H-11-2382, 2012 WL 2368302, at *2 (S.D. Tex. June 21, 2012); *see also* <u>TIG Ins. Co. v. Sedgwick James of Washington</u>, 184 F. Supp. 2d 591, 598 (S.D. Tex. 2001) (Atlas, J.) (where the certificate of insurance referenced the policy, "the holder of a

---

[11] Document No. 13, ex. A.

[12] <u>Id.</u>; Document No. 16, exs. A at 5 & A-4.

6

certificate of insurance should obtain the insurance policy to ascertain his coverage," rejecting plaintiffs' argument that they never received the policy and therefore could rely solely on the certificate of insurance).[13]

There is no showing that Davnic ever objected to being bound by the Group Policy referenced in and made effective by the issuance of each year's new Certificate. "Any act inconsistent with an intent to avoid a contract has the effect of ratifying the contract." Mo. Pac. R. Co. v. Lely Dev. Corp., 86 S.W.3d 787, 792 (Tex. App.--Austin 2002, pet. dism'd). In fact, Davnic admits that it relied on the policy to make two previous claims, which Bancroft paid "in accordance with the Insurance program."[14] See Lely, 86 S.W.3d at 792 ("Ratification may be inferred by a party's course of conduct and need not be shown by express word or deed."). Moreover, Davnic's counterclaims in this suit seek benefits under the 2009 Group Policy.[15] Seeking benefits under this policy estops Counter-Plaintiffs from claiming that they are not bound by the policy's venue clause. See Hellenic Inv. Fund, Inc. v. Det Norske Veritas, 464 F.3d 514, 517-18 (5th Cir. 2006) ("Direct-benefit

---

[13] Davnic asserts in its counterclaim that it requested a copy of the Group Master Policy on numerous occasions. Document No. 13 at 17. However, Davnic does not aver, much less produce any evidence, that it took any of the steps specified in the Certificate of Insurance actually to view the Policy.

[14] Document No. 13 at 11.

[15] Document No. 13 at 12.

estoppel 'involve[s] non-signatories who, during the life of the contract, have embraced the contract despite their non-signatory status but then during litigation, attempt to repudiate the arbitration clause in the contract.'" (quoting E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S., 269 F.3d 187, 200 (3d Cir. 2001))); In re Kellogg Brown & Root, Inc., 166 S.W.3d 732, 739 (Tex. 2005) ("Under 'direct benefits estoppel,' a non-signatory plaintiff seeking the benefits of a contract is estopped from simultaneously attempting to avoid the contract's burdens, such as the obligation to arbitrate disputes.").

Davnic received actual and constructive notice that the Group Policy could be enforced only in Saint Lucia under Saint Lucia law; moreover, by accepting performance in the past and seeking performance under its counterclaims here, Davnic is estopped from claiming that it did not agree to the forum selection clause contained in the Group Policy.

2. No Waiver

Davnic contends that Bancroft waived the Saint Lucia forum selection clause when it filed the instant action to collect on the Notes in this Court. "Waiver is generally understood to be the intentional relinquishment of a known existing legal right." N. Am. Specialty Ins. Co. v. Debis Fin. Servs., Inc., 513 F.3d 466,

8

470 (5th Cir. 2007) (quotation marks and citation omitted). "For waiver to occur, there must be an existing right, knowledge of its existence, and either an actual intention to relinquish that right or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished." Id. The Notes and Security Agreements expressly provide that they are governed by Texas law.[16]  As this Court previously held under virtually identical facts, Bancroft's filing of this suit on the promissory notes in Texas did not waive its right to enforce the forum selection clause in claims regarding the insurance policy. Bancroft Life & Cas. ICC, Ltd. v. FFD Res. III, LLC, Civ. A. No. H-11-2382, 2012 WL 5032111, at *2 (S.D. Tex. Oct. 17, 2012). Nor is there merit to Davnic's argument that its claims to enforce the benefits of the insurance policy are compulsory counterclaims and therefore must be brought in this Court. Assuming without deciding that Davnic's Policy claims fall within the ambit of Rule 13(a) because they "arise[] out of the transaction or occurrence that is the subject matter of the opposing party's claim," FED. R. CIV. P. 13(a)(1)(A), the Court may not ignore the forum-selection clause. *See e.g.,* Publicis Commc'n v. True N. Comm'cns Inc., 132 F.3d 363, 365-66 (7th Cir. 1997) (Easterbrook, J.) (holding that counterclaims subject to a forum selection clause must be brought in the specified forum and are not susceptible to preclusion for

---

[16] Document No. 1, exs. 1 ¶ 11, 2 ¶ 7.03, 3 ¶ 11, 4 ¶ 7.03.

not being brought as compulsory counterclaims). In other words, the forum selection clause precludes Bancroft from later claiming that Davnic may not assert their insurance claims in Saint Lucia. *See* id. at 366 ("If the parties promise to litigate a dispute only in a particular forum, a party to the contract cannot seek to bar the litigation in that forum because the claim was not presented in some other forum."). Davnic has made no showing that courts in Saint Lucia, which is an independent member state of the British Commonwealth and recognizes Queen Elizabeth II as head of state, and which has a judicial system that applies English common law, with final appeal to the Privy Council in London, would not respect the foregoing principle.

3. Forum Selection Clause Is Not Unreasonable

Finally, Davnic argues that the forum selection clause is unreasonable because: (1) it is the product of fraud or overreaching; (2) a jury trial is not available in Saint Lucia and thus Davnic will be deprived of its day in court; and (3) enforcing the forum selection clause would be against Texas public policy.

First, Davnic asserts that "[t]he alleged St. Lucia forum selection clause is the result of fraud and overreaching because, as Bancroft admits, it unilaterally changed the clause with no input from or notice to its insured Davnic."[17] Under the facts of

---

[17] Document No. 18 at 13.

this case, however, Davnic received notice from the time it completed its application that the Group Master Policy could only be enforced in Saint Lucia, and the language of the forum selection clause did not change at all from December 2006 to August 2009, when Davnic filed its last request for coverage. Davnic also knew from the Certificate of Insurance that in order to read the entirety of the Group Policy referenced in each annual Certificate of Insurance, they would need to do so in the British Virgin Islands. These are sophisticated parties--Bancroft, a foreign insurance company steering clear of American law and selling products not obtainable in the United States, and Davnic, an entity that warranted in its application that the "[a]pplicant . . . is a sophisticated person with a substantial net worth in excess of USD $1,000,000."[18] See, e.g., The Bremen, 92 S. Ct. at 1914 (finding that the forum selection clause was "made in an arm's-length negotiation by experienced and sophisticated businessmen" and that "it should be honored by the parties and enforced by the courts").

Davnic's second argument is that litigating in Saint Lucia would deprive Davnic of its day in court. This is not persuasive. "The Supreme Court has . . . instructed American courts to enforce [forum-selection] clauses in the interests of international comity and out of deference to the integrity and proficiency of foreign courts." Mitsui & Co. (USA), Inc. v. Mira M/V, 111 F.3d 33, 35

---

[18] Document No. 13, ex. J at 8.

11

(5th Cir. 1997) (citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 105 S. Ct. 3346, 3355 (1985)).  Moreover, the necessity of traveling to a remote forum does not preclude the enforcement of a forum selection clause.  *See* Pugh v. Arrow Electronics, Inc., 304 F. Supp. 2d 890, 895 (N.D. Tex. 2003) (Solis, J.) (citing Carron v. Holland, 51 F. Supp. 2d 322, 326 (E.D.N.Y. 1999)).

Similarly unavailing is Davnic's argument that the lack of a provision for a jury trial makes enforcement of the forum selection clause unjust in this case.  *See, e.g.*, Interamerican Trade Corp. v. Companhia Fabricadora de Pecas, 973 F.2d 487 (6th Cir. 1992) (enforcing a Brazil forum selection clause because plaintiff would not be deprived of his day in court even though he would have no right to a jury trial in Brazil); Alt. Delivery Solutions, Inc. v. R.R. Donnelley & Sons Co., No. Civ. SA05CA0172-XR, 2005 WL 1862631, at *12-13 (W.D. Tex. July 8, 2005) (Rodriguez, J.) (holding a forum selection clause enforceable even though a Mexico forum would not allow the case to be tried by a jury).  In Alternative Delivery Solutions, the court explained:

> To invalidate all forum selection clauses that designate forums that do not provide for a jury trial would implicate many of the comity concerns raised by the Supreme Court in The Bremen and other cases concerning international agreements. Further, Plaintiff's argument that being deprived of its right to jury trial will "for all practical purposes . . . prevent [plaintiff] from having its day in court" is wholly unconvincing, for such

12

> a conclusion would presumptively invalidate all bench trials and arbitration clauses.

2005 WL 1862631, at *12. Other Circuits have held that a lack of jury trials does not render a forum inadequate. *See, e.g.,* Rivera v. Centro Medico de Turabo, Inc.*,* 575 F.3d 10, 23-24 (1st Cir. 2009); Interamerican Trade Corp., 973 F.2d at 489 (6th Cir. 1992); Lockman Found. v. Evangelical Alliance Mission, 930 F.2d 764, 768 (9th Cir. 1991); In re Union Carbide Corp. Gas Plant Disaster at Bhopal, India in Dec., 1984, 809 F.2d 195, 199 (2d Cir. 1987) *cert. denied*, 108 S. Ct. 199 (1987). Moreover, the Fifth Circuit has observed that the Supreme Court has "roundly rejected the notion that a forum selection clause can be circumvented by a party's asserting the unavailability of American remedies." Haynsworth, 121 F.3d at 967 (citing Scherk v. Alberto-Culver Co., 94 S. Ct. 2449, 2456-57 (1974)).

Finally, Davnic's argument that enforcing the forum selection clause would be contrary to Texas public policy, as expressed in the Texas Insurance Code, lacks merit. Davnic expressly agreed to litigate insurance matters in a non-Texas forum and that the insurance they were buying could not be obtained in the United States; hence Davnic's refuge in the Texas Insurance Code is ineffectual. The Fifth Circuit in Haynsworth stated:

> It defies reason to suggest that a plaintiff may circumvent forum selection and arbitration clauses merely by stating claims under laws not recognized by the forum

> selected in the agreement. A plaintiff simply would have to allege violations of *his country's* tort law or *his country's* statutory law or *his country's* property law in order to render nugatory any forum selection clause that implicitly or explicitly required the application of the law of another jurisdiction.

121 F.3d at 969 (quoting <u>Roby v. Corp. of Lloyd's</u>, 996 F.2d 1353, 1360 (2d Cir. 1993) (emphasis in original)).  In sum, Davnic has not "advanced a sound rationale to overcome the presumption that federal courts 'must enforce forum selection clauses in international transactions.'" <u>Hellenic Inv. Fund</u>, 464 F.3d at 520 (quoting <u>Haynsworth</u>, 121 F.3d at 962).  Therefore, Davnic has failed to meet its heavy burden of persuasion to show that the Saint Lucia forum selection clause is unreasonable under the circumstances shown here.

For the foregoing reasons, Davnic's counterclaims must be dismissed for improper venue because they arise from or relate to the insurance contract containing a choice of forum clause designating Saint Lucia as the exclusive forum for resolution of claims under this contract.

### III. <u>Order</u>

Accordingly, for the foregoing reasons, it is

ORDERED that Counterclaim-Defendant Bancroft Life & Casualty ICC, Ltd.'s Motion to Dismiss the Counterclaims (Document No. 16)

14

is GRANTED, and Davnic Ventures, L.P.'s ("Davnic") counterclaims are all DISMISSED without prejudice for improper venue.

The Clerk shall notify all parties and provide them with a signed copy of this Order.

SIGNED at Houston, Texas, on this <u>25th</u> day of March, 2013.

                                                  EWING WERLEIN, JR.
                                         UNITED STATES DISTRICT JUDGE